# Geiser Manufacturing Company, Appellant, *v.* Frankford Township.

*Townships—Supervisors—Contract—Consultation and meeting of supervisors—Ratification.*

Where two supervisors of a township meet together with a person claiming damages from the township for the destruction of a traction engine which had broken through a defective township bridge, and the supervisors, in order to avoid litigation, agree to purchase another engine in place of the one destroyed, and they both subsequently sign an order for the new engine, but not at the same time or in the presence of each other, and thereafter they meet and prepare a minute as to the claim and appropriate money for payment of the claim, the order after it has been executed, and the engine delivered, will be deemed to have been based upon sufficient consultation and consideration on the part of the supervisors, and will constitute a valid contract of the township.

Argued March 11, 1907. Appeal, No. 1, March T., 1907, by plaintiff, from judgment of C. P. Cumberland Co., Feb. T., 1905, No. 175, on verdict for defendant in case of the Geiser Manufacturing Company v. Frankford Township. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Reversed.

Assumpsit to recover on a contract for the sale of a traction engine. Before SADLER, P. J.

The facts are stated in the opinion of the Superior Court.

The trial judge gave binding instructions for defendant.

*Error assigned* was in giving binding instructions for defendant.

*E. M. Biddle, Jr.*, with him *C. C. Bashore*, for appellant.— There was sufficient evidence of ratification of the original contract to carry the case to the jury: McKnight v. City of Pittsburg, 91 Pa. 273 ; Phila. v. Hays, 93 Pa. 72; Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Shiloh Street, 165 Pa. 386 ; 1 Dillon on Munc. Corp., sec. 463 ; Austin Mfg. Co. v. Ayr, 31 Pa. Superior Ct. 356.

The minutes in question were the official record of the governing body of the township, and as such the best evidence of its action, and not subject to impeachment by parol testimony: School Dist. v. Atherton, 53 Mass. 105 ; Taylor v. Henry, 19 Mass. 397 ; Roland v. School Dist., 161 Pa. 2 ; McCrea v. School Dist., 145 Pa. 550.

The contract of August 23, 1904, was sustainable, apart from its subsequent ratification : Dull v. Ridgway, 9 Pa. 272 ; Hopewell Twp. v. Putt, 2 W. N. C. 46 ; Pottsville v. Norwegian Twp., 14 Pa. 543 ; Wheeled Scraper Co. v. Butler Twp., 24 Pa. Superior Ct. 477.

*S. B. Sadler*, with him *Herman Berg, Jr.*, for appellee.— Where a township has but two supervisors they must honestly confer with each other, and fairly deliberate in the interest of the taxpayers before they attempt to bind the township by their action : Somerset Twp. v. Parson, 105 Pa. 360 ; Logan v. Rochester Twp., 21 Pa. Superior Ct. 113 ; Climax Road Machine Co. v. Allegheny Twp., 10 Pa. Superior Ct. 437 ; Austin Mfg. Co. v. Ayr Twp., 17 Pa. Superior Ct. 419 ; s. c. 24 Pa. Superior Ct. 91 ; 31 Pa. Superior Ct. 356 ; American Road Machine Co. v. Washington Twp., 9 Pa. Superior Ct. 105 ; Western Wheeled Scraper Co. v. Butler Twp., 24 Pa. Superior Ct. 477 ; Union Twp. v. Gibboney, 94 Pa. 534 ; Cooper v. Lampeter Twp., 8 Watts, 125 ; Penna. R. R. Co. v. Ry. Co., 167 Pa. 62.

There was no sufficient evidence of a ratification of the void contract: Cooper v. Lampeter Twp., 8 Watts, 125 ; Addis v. Pittsburg, 85 Pa. 379 ; Philadelphia v. P. & R. R. R. Co., 88 Pa. 314 ; Phila. v. Hays, 93 Pa. 72 ; Shiloh

148 GEISER MFG. CO., Appellant, *v.* FRANKFORD.

Street, 165 Pa. 386 ; Silsby Mfg. Co. v. Allentown, 153 Pa. 319.

The mere meeting of supervisors for the purpose of paying for a purchase improperly made is not a ratification of such a contract : Austin Mfg. Co. v. Ayr, 31 Pa. Superior Ct. 356 ; American Road Machine Co. v. Washington Twp., 9 Pa. Superior Ct. 105 ; Jenkins v. Cotton Mfg. Co., 115 N. C. 535 (20 S. E. Repr. 724) ; Kavanaugh v. City of Wausau, 98 N. W. Repr. 550 ; Caxton Co. v. School Dist., 98 N. W. Repr. 231 ; Murphy v. Clinton, 182 Mass. 198 (65 N. E. Repr. 34) ; Harrison Twp.'s App., 20 Pa. C. C. Rep. 54.

The plaintiff may prove by parol that no resolution was ever legally passed : Altoona City v. Bowman, 171 Pa. 307 ; Gearhart v. Dixon, 1 Pa. 224 ; Sidney School Furniture Co. v. School Dist., 158 Pa. 35 ; Thompson v. Chase, 2 Grant, 367 ; Poindexter v. McDowell, 84 S. W. Repr. 1133 ; Hopkins v. Danby School Dist., 27 Vt. 281 ; Sherman v. Buick, 93 U. S. 209 ; Miller v. Fichthorn, 31 Pa. 252.

OPINION BY ORLADY, J., October 7, 1907 :

On August 21, 1904, a traction engine owned by Anson Metzger broke through a bridge in the defendant township and was wrecked ; the sole cause of the accident being the defective condition of the bridge, and without any contributory negligence on the part of Metzger. On the following day Metzger gave notice of his claim against the township supervisors, T. K. Warner and G. H. Fry, when, after several interviews between these parties it was admitted that the township was liable in damages for the loss sustained by Metzger, and the supervisors promised to purchase and pay for a similar engine from the plaintiff and deliver it to Metzger in settlement of this claim against the township. An order for such an engine was separately signed by the two supervisors, and subsequently another and more formal order was prepared, dated August 23, which was separately signed and sealed by the two supervisors in which the plaintiff was directed to " ship for the undersigned on the terms and conditions named below to Carlisle Pa. by the C. V. R. R.," a traction engine therein described in consideration for which they agreed to pay the sum of $954, on October 1, 1904, and to deliver to the plaintiff on August 25,

1904, the broken engine " with the understanding that neither cash nor second hand machinery are to be considered any part of the rent, and the same shall be forfeited in case such leased machinery is repossessed." The engine was shipped in accordance with the order, and arrived at Carlisle on August 26, prior to which time Fry and Warner separately paid to Metzger equally the amount necessary to pay the freight charges on the engine, and a definite sum of money to buy the coal required to operate the engine. Metzger took possession of the engine with the knowledge, if not on the direct order, of the supervisors, and has since retained it without question from anyone as to his right thereto, and with like authority the old engine was delivered to the plaintiff through a local agent at Carlisle. This suit was brought to recover the purchase price of the engine ; the defense being that no valid contract had ever been made by the supervisors. At the conclusion of the trial the jury was directed to render a verdict for the defendant, the court saying, " We are well satisfied, after considering the evidence in the case, that there was no such meeting of the board of supervisors, or such deliberation, consultation or action taken by them in reference to the order or purchase of the engine, for the use of Metzger, or in the order given August 23, 1904, as renders the township of Frankford liable to the plaintiff in this action."

A careful examination of all the testimony convinces us that this action of the court was erroneous. Instead of resorting to expensive and tedious litigation the supervisors adjusted the claim by furnishing a new engine. Warner testified, " I didn't want to get into a lawsuit, and I thought I would try to settle it. We didn't want to pay $2,000, and we thought we could get an engine cheaper than standing a lawsuit, and I signed the contract because we were afraid of that lawsuit." The other supervisor, Fry, testified, " the first I knew of this was that Metzger and Warner came up and told me what happened, and I wondered what I was going to do. I says it's a bad thing, and I says of course we will have to do the best we can, but there was nothing said at all in relation to how it should be done." It is quite apparent that they gave the question some consideration, singly and together, and after knowing all the facts of the case, Fry signed the first order when it was

presented to him with Warner's signature attached thereto, and a second order which was made in substitution of the first, and which Warner had signed without being present at the time when Fry's signature was attached to it, and each knew that on this order the engine would be shipped. The signature of each supervisor was subsequent to oral consultations in regard to the subject and was the ratification of the conclusion reached by them at these conferences. Warner further testified that in order to keep properly on record their action he went to his attorney and stated the facts in the case about the engine, and " I said that we had better get this on the minutes, and you had better try and give us a copy." With this form prepared, which he states was not suggested by anyone, he wanted to have the matter right, he took the prepared minute to Mr. Minnick, the township clerk, with the direction that it should be recorded in the township book. The clerk testified that about September 1, the two supervisors met at his house and Warner said " Here are some minutes to go on the book." " Q. While they were there did you hear them discuss the Metzger matter at all? A. Very little. Q. Did you hear them talk at all? A. Well, something about a broken engine, but I paid no attention to it. Q. Had you heard of Metzger's broken engine before? A. Yes. Q. Did you think they were talking of Metzger's broken engine? A. I knew they were talking about that. Q. Then when you read the minutes did you know that the minutes referred to Metzger's engine of which the two supervisors had talked a day or two before when at your house? A. Yes. Q. You knew the minutes referred to that? A. Yes. Q. You heard them talk about that at your house together? A. Yes. Q. Did you make up the minutes yourself or get them from one of the supervisors? A. The supervisors furnished me the minutes. Q. Is that the regular practice? A. It was for me. Q. How long have you been a clerk? A. Twice, two years. Q. During that time you always got the minutes from the supervisors, or did you make them up yourself? A. I always got the minutes from the supervisors. Q. Then what you did in this case was your regular practice of getting the minutes from the supervisors? A. Yes."

The minute in question which was offered in evidence recites

that the meeting was called for the purpose of considering the claim of Metzger, and as the loss was due to the weakness of the bridge, the township was liable therefor, and further, having satisfactory proof that the lowest possible price at which such reparation can be made is the sum of $954, plus freight charges and coal, the sum of $954 and necessary freight charges was appropriated out of the township treasury toward the payment of the claim of Metzger. The following minute was one dated September 17 which recited the presence of the supervisors, and "minutes of previous meeting read and approved," and that the sum of $275 of township funds was appropriated at that meeting for the payment of a road grader. It appears that Warner cannot write, and Fry denied that he had ever read any minutes, or knew anything at all about them. His credibility is a proper subject for the consideration of a jury, in the light of his other testimony. The minute does not contain a fact not covered in the oral conversations between the supervisors and Metzger. It does not contradict any act of either and substantially corroborates both. Warner states that the day after the engine was broken he went with Metzger to see Fry, in order to see if they couldn't satisfy Metzger; to see what terms he would agree on. "Q. Didn't Metzger say to you there that what he wanted was to be put back in as good position as before, that he wanted to have an engine such as would have as good a guarantee as the one that was broken? Did you say anything to him about having the broken engine mended? A. I told him I thought we could get it repaired without much money, and he said he wouldn't accept it, that he would lose his guarantee. Q. Afterwards you and he went to see Fry? A. Yes. Q. Did you tell Fry that Metzger would not accept an engine without a guarantee? It was after this conversation with Fry that you signed any paper at all? A. Yes. Q. Then it was on the following day, the 23d, that you signed this paper? A. Yes. Q. Before you signed it, you say that Kutz told you that the Geiser Company would not allow you more than $371 on the old engine? A. That's all, he said they couldn't allow more than old scrap."

Independent of the record made in the township book, a jury would be clearly warranted in finding from the testimony that the question of the liability of the township to Metzger

was carefully considered by the two supervisors, and that liability was properly adjusted by their securing for him a new engine in payment of his claim for the injuries to the old one, and that in furtherance of this settlement of a claim against the township, they signed the order for the engine, directing that it should be consigned to themselves and delivered to Metzger, after they provided for payment of the freight.   Until the time for the payment of the engine arrived they never made any complaint as to the fairness of the transaction, and never to the time of the trial, of the right of Metzger to hold the new engine in ratification of their contract.   In the light of the authorities there was sufficient evidence of deliberation and consultation by the supervisors to require the submission of the case to the jury.   One supervisor cannot bind the township for performance of a contract, the propriety of entering into which is a proper subject for deliberation, and the exercise of judgment, and when the business requires deliberation, consultation and judgment all should be convened because the advice and opinions of all may be useful though they do not unite in opinion; but no set form has ever been suggested as essential to bind the township.   And while the order, standing alone, was given in an irregular manner, and was executory only, and in legal effect but a preliminary step in the transaction, yet, when the supervisors met and conferred together with regard to its subject-matter and subsequently ratified their business conferences by accepting the fruits of their bargain through the adjustment and settlement of a large claim against the township, a jury might well conclude that the township for which they acted should be held to the same rules of good faith which obtain in business between individuals.   There is sufficient in this record to warrant a jury in treating their order for the engine and the acceptance of it by delivering it to Metzger as a joint ratification of their former consultations and deliberation so as to make the township liable for their action. The debt due to Metzger by the township is paid, the only question now is who should be the paymaster, the plaintiff or the real debtor?   The whole question is so fully and thoroughly reviewed in Austin Manfacturing Company v. Ayr, 31 Pa. Superior Ct. 356, that we do not feel it necessary to again refer to it.   The case should have been submitted to the jury under

proper instructions.    See Machinery Co. v. Union Township, post, p. 538.

The judgment is reversed, and a venire facias de novo awarded.